# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

SOS AbundaBox LLC, a Wyoming limited liability company,

    Plaintiff(s),

v.

Quickmed, LLC, a Wyoming limited liability company;
DOES 1-50,

    Defendant(s).

---

**COMPLAINT FOR:**
1) INJUNCTIVE RELIEF;
2) BREACH OF CONTRACT;
3) DECLARATORY JUDGMENT.

---

COMES NOW, Plaintiff, SOS Abundabox LLC ("Plaintiff" or "AbundaBox"), by and through its attorneys, the law firm of Beale Legal Counselors, LLC and its Complaint for Injunctive Relief, Breach of Contract, and Declaratory Judgment, alleges as follows against Defendant, Quickmed, LLC ("Defendant" or "Quickmed," together with AbundaBox the "Parties"):

## INTRODUCTION

1. AbundaBox is an innovative health-care company dedicated to improving access to health care resources for vulnerable individuals. Among other services, AbundaBox partners with federal, state, local, and private organizations to source and deliver AbundaBox™ branded "HealthPacks" filled with health-care related products to

patients on a personalized basis, and provides these patients with related services. Upon information and belief, Quickmed is a business engaged in a wide range of health care services in Northeast Ohio.

2. This action arises out of Quickmed's flagrant breaches of a Master Services Agreement between the Parties dated September 9, 2023 (the "MSA", attached hereto as **Exhibit 1**) and related malfeasance. Pursuant to the MSA, AbundaBox agreed to provide certain goods and services to Quickmed's patients as set forth in a Statement of Work attached as Exhibit A to the MSA ("Statement of Work"). In exchange, Quickmed agreed to pay AbundaBox fees for providing these goods and services (the "Fees"), provide AbundaBox with accurate, timely, and compliant data, remain in compliance with applicable laws relating to the MSA, and perform other obligations.

3. Quickmed has breached the MSA in a variety of ways, including by failing to adhere to applicable laws, failing to provide AbundaBox with information sufficient for AbundaBox to ensure compliance with applicable laws, failing to respect AbundaBox's copyrights and trademarks, and failing to pay AbundaBox for services it provided. Among other damages, Quickmed owes AbundaBox more than $864,912 in unpaid invoices.

4. On February 1, 2024, AbundaBox executed two ACH debits collectively in the amount of $864,912 (the "ACH Transactions") pursuant to the terms of the MSA to recover some of its outstanding fees. The MSA states the "Fees will be payable and authorized in advance by [Quickmed] for AbundaBox™ to ACH Debit the assigned receivable bank account immediately upon receipt by [Quickmed] of the reimbursement." (*See* MSA § 3.1.)  This is a standard provision in the health care field.  However, when

Abundabox withdrew the funds, which were by then months overdue, Quickmeds accused AbundaBox of "fraud" and threatened to involve the Department of Justice. A dispute now exists whether AbundaBox was entitled to execute the ACH Transactions, and thus AbundaBox seeks a declaration from this Court that it was entitled to do so.

5. In addition, AbundaBox seeks injunctive relief. AbundaBox is informed and believes, and therefore alleges, that Quickmed falsely impersonated AbundaBox by directly sending thousands of its patients health boxes similar to the AbundaBox HealthPacks. AbundaBox did not authorize or know about these packs before they were sent, but upon information and belief they wrongfully contained AbundaBox™ branded materials. Quickmed has also continuously violated AbundaBox's copyrights and trademarks by wrongfully publishing AbundaBox™ branded information on its website. AbundaBox will be irreparably harmed should Quickmed be allowed to continue violating its intellectual property. It thus seeks an injunction prohibiting Quickmed from doing so.

6. AbundaBox also seeks an injunction prohibiting Quickmed from spreading false statements about AbundaBox. Quickmed has threatened that AbundaBox must produce a false document to "smooth things over" in connection with what, upon information and belief, appears to be a Department of Justice investigation in Quickmed's business practices. Quikmed has threatened that if AbundaBox fails to generate this document, it will make negative statements to AbundaBox's potential customers. Such defamation and interference with prospective business advantage would cause irreparable injury to AbundaBox.

**PARTIES, JURISDICTION, AND VENUE**

7. At all relevant times herein, Plaintiff AbundaBox has been a Wyoming limited liability company with a principal place of business of 10394 W Chatfield Ave., Ste. 108 Littleton, CO 80127.

8. Plaintiff is informed and believes, and based thereon alleges, that at all relevant times herein, Defendant Quickmed has been a Wyoming limited liability company with a principal place of business in Youngstown, Ohio.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) on the basis of diversity of citizenship.

10. Plaintiff is of diverse citizenship from the Defendant and the amount in controversy exceeds $75,000 in that Defendant owes Plaintiff in excess of $864,912 in unpaid fees. The amount in controversy additionally exceeds $75,000 insofar as the value of the injunctive relief described herein exceeds $75,000. The amount in controversy additionally exceeds $75,000 insofar as an actual dispute has arisen as to Plaintiff's ACH debit of $314,072.00 has arisen.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 pursuant to the Parties' choice of law provision and forum selection clause. Specifically, Section 14.10 of the MSA, entitled "Choice of Law.", states that "The substantive laws of the State of Colorado govern this Agreement, irrespective of its choice of law principles. The Parties agree that jurisdiction and venue for any matter arising out of or pertaining to this Agreement is proper only in the state and federal courts located in the State of Colorado,

United States of America.  Both Parties hereto consent to jurisdiction of such courts and waive any objections they have or may have to jurisdiction of and/or venue in such courts."

12. Declaratory relief is authorized and appropriate in this action pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, and all necessary parties are before the Court.  An actual controversy exists between the parties, including concerning the Parties' rights and obligations arising under the MSA.  The controversy is justiciable in character, and the relief requested herein is necessary to declare the parties' contractual rights, duties, and obligations.

## FACTUAL BACKGROUND

### *The MSA*

13. On or about September 9, 2023, the Parties executed the MSA.  The MSA permits Quickmed to receive certain services from AbundaBox, as detailed on a Statement of Work attached to the MSA. Specifically, the Statement of Work states that "[Quickmed] may utilize AbundaBox™ for one or more of the following services: (a) Call Center Management. … (b) Products and Shipping. … (c) Consultation and Billing." (Exhibit 1 at Exhibit A § 15.2.)

14. The first category of services identified by the Statement of Work (Call Center Management) first authorized AbundaBox to contact Quickmed's customers who Quickmed had determined were entitled to receive benefits (the "Recipients"). AbundaBox offered to provide this initial outreach to Quickmed's patients as outlined in the MSA.  To execute this initial outreach, the MSA obligated Quickmed to provide the contact information of patients who had consented to being contacted.  Specifically, the

5

Statement of Work required Quickmed to "provide API data loads or other agreed upon HIPAA compliant loads of customer data for the Identified Recipients into the AbundaBox™ telephony system." In other words, Quickmed was obligated to transfer its patient data to AbundaBox via secure means compliant with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Quickmed violated HIPAA regulations because, despite being provided a HIPAA secure link for data transmission of protected health information, it emailed unsecure files containing over 100,000 patient's data. This failure to remain in HIPAA compliance was an uncurable breach of the MSA by Quickmed.

15. Instead of allowing AbundaBox access to patient data to screen and query, Quickmed elected to send patient information for AbundaBox to service directly. At all times, AbundaBox has followed the written instructions of Quickmed's physicians to determine which Recipients should receive products. Quickmed healthcare providers issued authorizing orders of their NPI for billing services provided by an AbundaBox approved third-party billing company and authorizing that the patients were indeed their patients and needed AbundaBox's services.

16. AbundaBox provided Quickmed with HIPAA compliant Call Center access for outbound and inbound calls, and custom branded online access for patients to begin a self-enrollment process. AbundaBox provided other Call Center Services to Quickmed, including fulfilling inbound calls for patient service to answer questions, providing additional information on other Quickmed authorized services, making address changes, and canceling any services per the patient's request.

17. The second category of services identified by the Statement of Work (Products and Shipping) states, in full, that AbundaBox would "package the Products and [] manage all shipping and handling for Products subscribed for by Recipient." The referenced "Products" include AbundaBox offerings, including HealthPacks.

18. The third category of services identified by the Statement of Work (Consultation and Billing) states that "If [Quickmed] is not managing billing, an AbundaBox™ and Client authorized subcontractor outlined in Exhibit D, will submit all claims for reimbursement for subscription Products ordered by, and or serviced and maintained, and/or shipped to Recipients." (Exhibit 1 at Exhibit A § 15.2 (c).) In fact, the parties both consented to a qualified third-party billing provider. All billing was provided by this provider.

19. At all times, AbundaBox has complied with all of its obligations under the MSA, including the exhibits thereto.

20. In exchange for the delivery of the relevant goods and services, Quickmed agreed to perform a variety of obligations. First, Quickmed agreed to provide access to Quickmed's Electronic Health Records (EHR) and/or Electronic Medical Records (EMR) "as required to enable AbundaBox™ to provide the Services." (MSA § 2.1.) Quickmed never provided AbundaBox full access to these systems.

21. Quickmed also agreed to "provide all data required to perform the Services." (MSA § 2.2.) It "represent[ed] and warrant[ed] that all such Client Data will be provided in a timely manner sufficient to allow AbundaBox™ to provide the Services set forth in the Agreement." Quickmed failed to comply with the MSA §§ 2.1 - 2.2 as it refused to provide

7

AbundaBox with necessary and timely access to data and its systems. As a result of these breaches, AbundaBox lacked the data required to ensure compliance and accuracy. In early November of 2023, AbundaBox began suspending services to Quickmed until all compliance issues arising from Quickmed's failure to adhere to the agreement could be resolved, and until Quickmed would timely pay AbundaBox its fees.

22. Furthermore, Quickmed "represent[ed] and warrant[ed] that it [had] obtained all necessary consents, rights, and permissions to enter into this Agreement and use the Services in accordance with the terms of this Agreement." (MSA § 4.) Upon information and belief, Quickmed failed to obtain all consents and permissions prior to instructing AbundaBox to send HealthPacks to its patients. This was an additional uncurable breach of the MSA. By failing to comply with applicable law pertaining to this understood failure to obtain consents and permissions, Quickmed likewise breached its representation and warranty that Quickmed's "use of the Services shall comply with all applicable laws, statutes, ordinances, codes, rules, regulations, orders, judgments, decrees, standards, requirements, or procedures enacted, adopted, applied, enforced, or followed now or in the future by any federal or state governmental bodies or agencies." (*Id.*)

23. Quickmed also agreed that "[a]ll intellectual property rights … that are delivered to [Quickmed] … in the course of performing the Services … shall be owned by AbundaBox™." (MSA § 9.) Quickmed breached this provision by modifying AbundaBox's written materials protected by copyright and trademarks for its own purposes. Quickmed used these materials without authorization in a way that depicts that AbundaBox is

8

supporting an illegal program and misleading participants with inaccurate information. Additionally, AbundaBox is informed and believes, and based thereon alleges, that Quickmed may have wrongfully shipped boxes containing AbundaBox™ branded materials to their patients directly, without AbundaBox's knowledge or authorization. This misuse of AbundaBox's protected materials constitutes an additional uncurable, material breach of the MSA.

24. Last, Quickmed also agreed to "pay the fees ("Fees") set out in the applicable Statement of Work." To execute the payments, Quickmed agreed to permit AbundaBox to "ACH Debit the assigned receivable bank account immediately upon receipt by the [Quickmed] of the reimbursement." (MSA § 3.1) AbundaBox has confirmation that Quickmed has received reimbursements for AbundaBox's services in an amount exceeding $550,840. However, Quickmed has failed to maintain funds in the assigned receivable bank account sufficient to cover all fees owed, and has failed to otherwise transfer such funds to AbundaBox. As such, Quickmed has breached the agreement that AbundaBox would be paid its fees "immediately upon receipt by the [Quickmed] of the reimbursement."

### *The ACH Transactions*

25. AbundaBox packaged and shipped thousands of HealthPacks beginning in October of 2023. AbundaBox prepared invoices to Quickmed for each of the HealthPacks which were sent and performed all services identified in the invoices.

26. The MSA provides that Quickmed would order specified products and services from AbundaBox at the rates set forth in the MSA and seek reimbursement from

certain insurers. The reimbursements Quickmed received were required to be credited to an assigned receivable bank account that they had setup with CMS and other insurance companies for reimbursements from their NPI. Quickmed was required to transfer the reimbursements to an account from which AbundaBox could access fees owed. To access its fees, the MSA states the "Fees will be payable and authorized in advance by [Quickmed] for AbundaBox™ to ACH Debit the assigned receivable bank account immediately upon receipt by [Quickmed] of the reimbursement." (*See* MSA § 3.1.) The Statement of Work reiterates AbundaBox's right to debit its fees immediately upon Quickmed's receipt of the reimbursement for AbundaBox's services. (MSA Ex. A at § 15.4 ("Fees will be payable to AbundaBoxTM in accordance with the Fee Schedule included in this Statement of Work … Fees will be payable and authorized in advance by Client for AbundaBox™ to ACH Debit the assigned bank account immediately upon receipt by the Client of the reimbursement.").)

27.  No separate authorization was required for AbundaBox to access its Fees after Quickmed received reimbursements. Quickmed was required to maintain reimbursements sufficient to cover AbundaBox's Fees in the assigned receivable bank account for AbundaBox's immediate debit.

28.  As of February 1, 2024, Quickmed owed AbundaBox in excess of $864,912 in Fees arising from certain unpaid invoices. AbundaBox performed all of the services identified in these invoices and AbundaBox has confirmed that Quickmed received reimbursements for these two invoices, and so all Fees for such services were unequivocally due. Per the agreement, AbundaBox attempted to execute the ACH

10

Transactions and debit $864,912 from the assigned receivable bank account. Because there were insufficient funds in the account, AbundaBox was only able to recover $314,072.00 from the account. The remainder remains unpaid.

29. A dispute has arisen as to whether AbundaBox was entitled to execute the ACH Transactions. Specifically, AbundaBox is in possession of text messages sent by Quickmed's principal to a third party calling these ACH Transactions "fraud," and threatening to refer the issue to an "FBI prosecutor."

30. Quickmed also owes additional unpaid Fees. In total, AbundaBox has shipped 68,139 HealthPacks at Quickmed's direction at a contract rate of $82, or $5,587,398. AbundaBox has only recovered $2,101,940 (including the $314,072.00 at issue). Thus, Quickmed owes at least $3,485,485 in unpaid Fees, which amounts will be proven at trial.. Upon information and belief, Quickmed has also received reimbursement for some, if not all, of this amount. AbundaBox brings this lawsuit to recover all sums due under the MSA.

### *Quickmed's Wrongful Use of AbundaBox's Intellectual Property*

31. Further misfeasance arises out of Quickmed's wrongful use of AbundaBox's intellectual property. AbundaBox is informed and believes, and based thereon alleges, that soon after the execution of the MSA Quickmed sought to "cut out" AbundaBox from the delivery of the bargained-for products and services. Specifically, upon information and belief, Quickmed began independently sourcing products and services similar to those contained in AbundaBox™ HealthPacks and delivering them to its patients without involving AbundaBox. Upon information and belief, these boxes may have contained

AbundaBox™ proprietary materials, which had been modified without the knowledge or prior consent of AbundaBox.

32. AbundaBox learned of this wrongful action when AbundaBox was informed that Quickmed shipped over 25,000 boxes similar to AbundaBox™ HealthPacks to Quickmed's customers without AbundaBox's permission or authorization. AbundaBox has also received complaints from Quickmed's customers relating to boxes which AbundaBox believes did not ship. For instance, AbundaBox received a complaint from an individual on December 22, 2023 asking why she had received a certain package from Abundabox. This complaint strongly indicates that Quickmed had sent this individual a package because 1) the customer complained over 2 months after the date that AbundaBox had last sent a package to her; and 2) the customer described the contents of the package she had received, which contents did not match with what Abundabox sent.

33. Upon information and belief, the boxes shipped by Quickmed purporting to be AbundaBox HealthPacks did not comply with applicable laws.

34. Quickmed has also, without AbundaBox's permission, wrongfully used AbundaBox's copyrights and trademarks on its website located at https://quickmedclinic.com/. Specifically, Quickmed has a portion of its website labeled "AbundaBox," which AbundaBox did not authorize Quickmed to create. This webpage contains an "apology letter" purportedly from "the AbundaBox team." This letter states "We'd like to extend a heartfelt apology for any confusion we might have caused when you received your recent AbundaBox. We recently sent out HealthPacks to support our

12

community during this challenging health season, and due to an oversight, some families received a HealthPack mentioning Medicare." This webpage also provides the false statement that "All Health Boxes are Free!" In fact, there is a cost of AbundaBox's HealthPacks, which is billed to the patients' insurance.

35. Upon information and belief, the boxes shipped by Quickmed may contain COVID tests that lacked proper chain of title and which may not have been not authorized for sale in the United States. Quickmed previously set up a phone call between Abundabox and an individual who offered to provide such tests to Abundabox at a discount. Abundabox declined the offer.

36. The letter posted on Quickmed's website was not authorized to be published on Quickmed's website and AbundaBox faces irreparable damage to its reputation by the implication that AbundaBox has made errors or mistakes with respect to the AbundaBox's shipped to Quickmed's patients. AbundaBox is informed and believes, and based thereon alleges, that the "confusion" referenced in the letter refers to an "oversight" contained in the boxes shipped by Quickmed purporting to be AbundaBox HealthPacks.

37. Quickmed's unauthorized use of AbundaBox's copyrights and trademarks, if allowed to continue, will cause irreparable harm to AbundaBox insofar as Quickmed's patients and members of the public are at risk being misled regarding the relationship between Quickmed and AbundaBox. It will also cause irreparable harm to Quickmed's patients who are being misled into believing that products shipped from Quickmed are in

13

fact AbundaBox™ products.  AbundaBox seeks injunctive relief to prohibit Quickmed's unauthorized use of AbundaBox's copyrights and trademarks, including AbundaBox™.

38. AbundaBox also seeks injunctive relief prohibiting Quickmed from interfering with AbundaBox's prospective business advantage and from defaming it to potential customers.  On January 30, 2024, Quickmed demanded that AbundaBox produce some sort of confirmation that Quickmed's method of billing insurance for the AbundaBox products was compliant with insurance requirements.  Upon information and belief, this demand arose after the Department of Justice began an investigation into Quickmed's business practices.  However, Quickmed's January 30, 2024 demand rests on the false premise that AbundaBox is responsible for the compliance of Quickmed's programs.  In fact, AbundaBox at all times followed the instructions of Quickmed's physicians in delivering goods and services, relying on Quickmed to obtain all appropriate consents and requirements per the MSA.  (*See, e.g.,* MSA §§ 2.2; 4; Ex. A § 16.2.)  At all times, AbundaBox complied with the instructions issued by Quickmed's physicians.

39. Notwithstanding the above, Quickmed threatened that if AbundaBox failed to produce a document confirming Quickmed's compliance with insurance requirements, it would make negative statements to several of SOS AbundaBox's potential customers.  Such defamation and interference with prospective business advantage would cause irreparable injury to AbundaBox.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### (Injunctive Relief against Quickmed and Doe Defendants)

14

40. The allegations of paragraphs 1 – 39 are incorporated herein by reference as though fully set forth herein.

41. Quickmed has continuously used AbundaBox's intellectual property in a wrongful and unauthorized manner.  Specifically, Quickmed has wrongfully replicated AbundaBox's HealthPacks program and sent its patients health boxes purporting to be AbundaBox boxes.  Upon information and belief, these boxes may have contained AbundaBox™ proprietary materials protected by copyright and trademark, which had been modified without the knowledge or prior consent of AbundaBox.

42. In addition, Quickmed has, without AbundaBox's permission, wrongfully used  AbundaBox's copyrights and trademarks on its website located at https://quickmedclinic.com/.

43. The wrongful use of AbundaBox's intellectual property constitute an actual or threatened injury to AbundaBox that cannot be compensated through a damages award.  Absent injunctive relief, AbundaBox will face reputational damage and irreparable confusion by patients.  Furthermore, the public are at risk being misled regarding the relationship between Quickmed and AbundaBox, causing further irreparable injury.

44. Furthermore, Quickmed has threatened that if AbundaBox failed to produce a document confirming Quickmed's compliance with insurance requirements, it would make negative statements to several of AbundaBox's potential customers.  Such defamation and interference with prospective business advantage would cause irreparable injury to AbundaBox.

45. AbundaBox seeks an order enjoining Quickmed from misusing AbundaBox's intellectual property. AbundaBox seeks a further order enjoining Quickmed from disparaging AbundaBox with false statements.

46. AbundaBox has been required to retain the services of its counsel herein and accordingly is entitled to an award of reasonable attorney's fees and costs in connection with this action pursuant to Sections 3.2 and 11 of the MSA.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract against Quickmed)

47. The allegations of paragraphs 1 – 46 are incorporated herein by reference as though fully set forth herein.

48. In or around September 9, 2023, Quickmed and AbundaBox executed the MSA.

49. AbundaBox performed all covenants and conditions required by it to be performed under the MSA, except for those covenants and conditions that have been waived or excused as a result of Quickmed's actions.

50. Quickmed has breached the MSA by, among other actionable conduct, (i) failing to adhere to applicable laws relating to the MSA; (ii) failing to provide AbundaBox with information sufficient for AbundaBox to ensure compliance with applicable laws, (iii) failing to provide AbundaBox access to Quickmed's systems to obtain necessary data; (iv) failing to transmit necessary data to AbundaBox; (v) failing to respect AbundaBox's copyrights and trademarks, and (vi) failing to pay AbundaBox its Fees when due.

51. As a direct and proximate result of Quickmed's failure to perform under the MSA, AbundaBox has been damaged in an amount to be proven at trial. Among other damages, Quickmed owes AbundaBox roughly $3,485,485 in unpaid Fees, which amount will be proven at trial.

52. AbundaBox has been required to retain the services of its counsel herein and accordingly is entitled to an award of reasonable attorney's fees and costs in connection with this action pursuant to Sections 3.2 and 11 of the MSA.

### THIRD CLAIM FOR RELIEF

### (Declaratory Relief against Quickmed)

53. The allegations of paragraphs 1 – 52 are incorporated herein by reference as though fully set forth herein.

54. An actual, present and justiciable controversy has arisen and now exists between AbundaBox and Quickmed, concerning their respective rights, duties and obligations under the MSA.

55. Specifically, Quickmed contends that AbundaBox's ACH debit of $314,072.00 from an assigned receivable bank account constitutes "fraud" or was otherwise improper. AbundaBox contends that the ACH Transactions (defined above) were lawful and proper, including pursuant to the language of the MSA.

56. Therefore, a justiciable controversy presently exists between AbundaBox and Quickmed.

57.  AbundaBox has been required to retain the services of its counsel herein and accordingly is entitled to an award of reasonable attorney's fees and costs in connection with this action pursuant to Sections 3.2 of the MSA.

## PRAYER FOR RELIEF

Plaintiff AbundaBox seeks relief as follows:

**ON THE FIRST CAUSE OF ACTION**

1. For injunctions as set forth above;

2. For an award of costs and attorneys' fees;

3. For interest as allowed by law; and

4. For all further relief as the Court may deem just and proper.

**ON THE SECOND CAUSE OF ACTION**

5. For compensatory damages in a sum to be determined according to proof at trial;

6. For recovery of costs of suit and reasonable attorneys' fees;

7. For interest as allowed by law; and

8. For such other and further relief as the Court deems just and proper.

**ON THE THIRD CAUSE OF ACTION**

9. For declaratory relief as requested herein;

10. For recovery of costs of suit and reasonable attorneys' fees;

11. For interest as allowed by law; and

12. For such other and further relief as the Court deems just and proper.

*/s/ Alexander F. Beale*
Alexander F. Beale
Beale Legal Counselors, LLC
2596 West Alamo Avenue
Littleton, CO 80120
Telephone: 303-794-7498
E-mail: alex@bealelegal.com
Colorado Bar No. 52430
*Attorney for Plaintiff SOS AbundaBox LLC*
10394 W Chatfield Ave.,Ste. 108
Littleton, CO 80127